MARY DAPOLITO, an Infant, by ANNA DAPOLITO, Her Guardian ad Litem, and ANNA DAPOLITO, Plaintiffs, *v.* ROBERT MORRISON, JR., as Receiver of the Rents and Profits in Foreclosure of Premises 265 E. 153rd St., Bronx, N. Y., Defendant.

Municipal Court of New York, Borough of Bronx, Second District, March 5, 1938.

*Alfred James* [*Louis Jay Brecher* of counsel], for the plaintiffs.

*Van Orman & Guilfoil* [*Vincent O'Brien* of counsel], for the defendant.

LEVY, J. The plaintiffs are child and mother. The infant plaintiff is a girl of sixteen. The family, for some time prior and subsequent to April 19, 1937 (the date of the accident giving rise to the present suit), had been tenants in the tenement house, or multiple dwelling, in question. Mrs. Joseph Apuglise was then the janitress of the building and had continuously been thus employed for some considerable time, both before and after that date. The janitress and her children took care of the premises, and made minor repairs on behalf of the landlord.

The radiator in the kitchen of the plaintiffs' apartment, for some time prior to the date of the accident, was loose and leaking. In February of 1937 complaint was made to the janitress; she sent her son to the apartment with a wrench, and he assumed to tighten the radiator connections.

Thereafter, and on April 19, 1937, while the plaintiffs were rolling up the linoleum in the kitchen, preparatory to moving to another apartment in the same building, the radiator fell upon the infant

plaintiff, causing certain injuries, the most serious of which was a permanent injury to her left great toe. Hospitalization was necessary for nearly three weeks. The young girl was in considerable pain. Nearly a year after the accident it was obvious at the trial that she still suffers discomfort, itching and biting pain, and curling of the great toe, unless encased in a shoe.

This suit for damages is brought by the infant plaintiff and her mother, the guardian, against the person who collected the rents, and maintained, operated and controlled the building. Thus stated, it would seem clear that the plaintiffs should prevail. No citation of statute or cases is necessary.

However, in the present case, the person who maintained, operated and controlled the building and collected the rents from the tenants, including the plaintiffs, was not a private owner or lessor, but an appointee of the court. In the latter part of January, 1937, the defendant was appointed a receiver of the rents and profits of the premises in a foreclosure action instituted in the Supreme Court, Bronx county. He duly qualified, and acted as receiver from that time until several months after the date of the accident. In due course he duly accounted as receiver and was discharged.

As receiver, the defendant was authorized to make repairs. Some minor repairs in the building were made by the receiver before the date of this accident. The defendant, through the managing agents appointed by him, authorized the janitress to make them. The receiver conceded that Mrs. Apuglise had general janitorial duties. The agents had the receiver's permission to make all minor repairs, but major repairs were to be done only after consultation with the receiver. The repair to the radiator would come within the category of minor repairs. The duties of the janitress were the same after the appointment of the receiver as before.

The distinction between passive and active negligence — the non-liability of the receiver for the one, and the legal responsibility of the receiver for the other — was argued at the close of the trial and in briefs. Were the question an open one for me I should not hesitate to render judgment in this case for the plaintiffs against the defendant in his official capacity, even though the defendant is a receiver and not a private owner or lessor, and even though the negligence of the receiver might be deemed to be purely "passive." In the 1936 Report of the Law Revision Commission of the State of New York (pp. 619–698) will be found a comprehensive study showing that the rule of non-liability of a receiver in foreclosure for passive negligence is unjust, undesirable in its social consequences, and in conflict with the legal theory applied in similar situations (N. Y. Legis. Doc. [1936] No. 65 [J].)

However, it is tbe rule (*Woman's Hospital* v. *Loubern Realty Corp.*, 266 N. Y. 123), and I am bound by it. The cases relied upon by the plaintiffs were either in the Second Department (*City Real Estate Co.* v. *Realty Construction Corp.*, 240 App. Div. 1000, and *Gabriele* v. *Kent Realty Co., Inc.*, 150 Misc. 415), or were dissenting opinions in the First Department (*New York Life Ins. Co.* v. *Hazlitt Realty Corp.*, 241 App. Div. 169, 170). Whatever the logic and reason and justice supporting a holding of liability, they cannot affect the determination of this court, in view of the definite, express and binding authorities in this department to the contrary. (*Alta Holding Co., Inc.*, v. *Ninson Realty Corp.*, 241 App. Div. 166; *Equitable Life Assur. Society* v. *Ninson Realty Corp.*, 151 Misc. 195; *Matter of Fischer*, 168 App. Div. 326.) The Court of Appeals, in *Woman's Hospital* v. *Loubern Realty Corp.* (266 N. Y. 123), finally disposed of this conflict in authority, and disposed of it adversely to the plaintiffs.

It is argued by the plaintiffs that the order of his appointment authorized tbe receiver to make repairs; and that the Supreme Court, on motion pursuant to notice, granted the plaintiffs leave to sue the receiver in the present action. These attempted distinctions are baseless. The fact that the order of appointment authorized the receiver to make repairs emphasizes, perhaps, the injustice of the rule; but the order was permissive and not mandatory, imposing no duty to repair upon the receiver. And while the appointing court authorized the plaintiffs to sue the receiver, the leave thus granted did not in any way determine that the plaintiffs had a cause of action. The issue here is not whether the order of appointment permitted the receiver to make repairs, or whether leave to sue the receiver was granted upon notice to him or *ex parte*, but whether tbe receiver is guilty of actionable affirmative negligence, as distinguished from a failure to act altogether.

The plaintiffs must and do recognize, therefore, that the receiver is not now liable for passive negligence. It is argued on their behalf, however, that the present is a case of active negligence. It is urged upon me that, while there might be no liability whatsoever upon the defendant if he had remained completely inactive, such is not the situation here. The receiver, by his representative, proceeded to make the repair; and since such repair was negligently made the receiver is liable, even though he was a volunteer. General judicial utterances are cited in support of the plaintiffs' contention. " The landlord, though a volunteer in making the repairs, is liable, none the less, for negligence in making them." (*Marks* v. *Nambil Realty Co., Inc.*, 245 N. Y. 256, 258.) " It is ancient learning that one who assumes to act, even though gratuitously, may thereby become subject to the duty of acting carefully, if he acts at all."

(*Glanzer* v. *Shepard*, 233 N. Y. 236, 239.) " The hand once set to a task may not always be withdrawn with impunity though liability would fail if it had never been applied at all." (*Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 167.)

A cursory examination of the foregoing remarks would lead one to believe that it would be sufficient to hold the defendant liable because he started to make the repairs and such " performance was remiss or ineffective." (*Barile* v. *Wright*, 256 N. Y. 1, 5.) A later case in the Court of Appeals, however, has made clear what the rule of law is in that regard. " There must be present an element of misrepresentation by the landlord and a reliance thereupon by the tenant. * * * a landlord, gratuitously making repairs for a tenant, and not fully performing his undertaking, is liable for a loss resulting from non-repair, if he has, by abandoning the work as finished, given a false assurance that the premises are in complete repair, and the tenant has placed full reliance thereupon." (*Kirshenbaum* v. *General Outdoor Advertising Co., Inc.*, 258 N. Y. 489, 496, 497.)

The testimony in this case was that the repair made by the son of the janitress in February of 1937, some two months before the date of the accident, was ineffective, and that the radiator continued, notwithstanding the repair, to be loose and leaking, in the same condition that it was prior to the repair. The plaintiffs admitted (or in any event failed to prove otherwise) that the defective condition was not aggravated by the attempted repair.

*Marston* v. *Frisbie* (168 App. Div. 666) is cited by the defendant. In that case it seems to have been held that where a landlord is under no obligation to make repairs, the fact that he volunteered to make them, and did so negligently, would not render the landlord liable, unless by such negligent repairs the danger was increased. The defendant can gain no comfort from this case because it was expressly disapproved by the Court of Appeals. " The tenant does not have to prove that by the negligent making of the repairs what was wrong has been made worse." (*Marks* v. *Nambil Realty Co., Inc.*, 245 N. Y. 256, 258, 259.)

In such case, however, the volunteer is not subject to liability unless the attempted making of the repairs gave a deceptive appearance of safety, upon which the tenant relied. " The gist of the defendant's wrong is the misleading quality of his conduct and words " (Bohlen, Studies in the Law of Torts, pp. 212, 224); and it is actionable when " the lessee neither knows nor should know " the true condition. (Restatement of the Law of Torts, § 362.)

This principle must be kept in mind when we read in the cases that a receiver, having no duty to repair, is responsible to an

injured plaintiff if the receiver has been " guilty of any active or affirmative negligence " (*Alta Holding Co., Inc.*, v. *Ninson Realty Corp.*, 241 App. Div. 166, 169), or that he has " participated in any affirmative act of negligence." (*Woman's Hospital* v. *Loubern Realty Corp.*, 266 N. Y. 123, 125.)

In my opinion, while perhaps we may have here a case of misrepresentation by conduct on the part of the defendant's representative who repaired the radiator, it is clear that there was no reliance thereupon by the tenant. The plaintiffs admitted that they knew some weeks before the accident that the radiator, loose and leaking before this repair, was in the same condition after it. There was no deceptive appearance upon which the tenants relied.

The case, therefore, resolves itself back to the question as to whether or not this defendant can be held liable, not for active or affirmative negligence, but for passive neglect. I do not think that under the facts in this case the defendant can be held liable for ineffective performance, and I regret to say that under the present state of the law the defendant cannot be held liable for failure to act at all. I am of the opinion, in agreement with the recommendation of the Law Revision Commission, that the law should be amended. That province is not mine. The duty to act here is with the Legislature.

In view of the opinion of the Court of Appeals in *Woman's Hospital* v. *Loubern Realty Corp.* (266 N. Y. 123), it has been recognized that the remedy for this situation is with the Legislature. Accordingly, it was proposed in 1937 (by Sen. Int. No. 245, Pr. No. 251; Ass. Int. No. 283, Pr. No. 286) to add a new section to the Civil Practice Act to be known as section 977-c, to render a receiver of rents and profits appointed in mortgage foreclosure proceedings liable in his official capacity, to the same extent that the owner would have been if he had continued in control, for injury caused by the receiver's negligence, active or passive, to person or property and sustained by reason of conditions on the premises under the receiver's control. The bill, unfortunately, failed to pass. The measure was again introduced in the Legislature this year (Sen. Int. No. 768, Pr. No. 802; Ass. Int. No. 1179, Pr. No. 1273).* The bill is designed to change the rule set forth in the *Woman's Hospital* case exempting such a receiver from liability for passive negligence. If, and when, passed the new section will affect only injuries caused subsequent to the effective date of the amendatory statute.

I am constrained to grant judgment in favor of the defendant on the law and on the facts, and to dismiss the complaint on the merits.

---

* Bill was not passed.— [REP.